IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 13-11544 |
| Renaissance Orange Grove, LLC, | Chapter 11 |
| *Debtor*. | Judge Douglas D. Dodd |

## MOTION TO SELL IMMOVABLE PROPERTY FREE AND CLEAR OF ANY LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND OR NATURE WHATSOEVER

**NOW INTO COURT**, through undersigned counsel, comes Renaissance Orange Grove, LLC ("ROG"), who moves to sell certain immovable property free and clear pursuant to 11 U.S.C. § 363(f). In support, ROG represents:

### Jurisdiction and Venue

1.     The Court may exercise jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to, among other provisions, 28 U.S.C. § 157(b)(2)(A), (N) and (O). ROG consents to the entry of a final order regarding the relief requested herein.

### Relief Requested

2.     ROG requests the entry of an order authorizing the sale of the estate's interest in the following described immovable property: 111.045± acres of vacant land on the east side of LA Highway 22 (adjacent to Orange Grove Subdivision), in Ascension Parish, LA, Including: Lots 5-A-1-A-1, 5-A-1-A-2, 5-A-1-A-3, 5-A-2-A-1-A, 5-A-2-A-1-B, 5-A-2-A-1-C, 5-A-3-A-1, CA-1, CA-2, and CA-3 of Orange Grove, in Section 9, T-10-S, R-3-E, Ascension Parish, LA (the "Property").[1]

---

[1]     A complete legal description of the Property may be found on Exhibit "B", hereto.

3.      ROG requests that the Property be sold free and clear of any liens, claims, encumbrances and interests of any kind or nature whatsoever pursuant to 11 U.S.C. § 363(b) and (f) and pursuant to the purchase agreement (the "Purchase Agreement")[2] between ROG and BGK Louisiana Properties, L.L.C. ("BGK" or "Stalking Horse Bidder").

**Background**

4.      On November 11, 2013 (the "Petition Date"), ROG filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. No party-in-interest has requested the appointment of a Chapter 11 trustee. As such, ROG is operating its business and administering its interests in property as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108.

5.      ROG was organized on January 25, 2006 as a Louisiana limited liability company. ROG was organized to acquire and develop immovable property located in Ascension Parish, LA on the east side of Louisiana Highway 22, south of Interstate 10. Between July, 2006 and October, 2008, ROG acquired some two hundred thirty-six (236) acres of immovable property ("Property"). ROG acquired the immovable property required utilizing loans from its affiliate, BGK Louisiana Properties, L.L.C. ("BGK").

6.      In order to fund infrastructure on the planned development, ROG chose to utilize a community development bond under Chapter 27-B of Title 33 of the Louisiana Revised Statutes, LA. REV. STAT. § 33:9039.11 *et seq.* To that end, Orange Grove Community Development District, a public corporation and a community development district of the State of Louisiana, organized and existing under and pursuant to an ordinance adopted by the Ascension Parish Council on September 7, 2006, and effective on October 4, 2006 ("Orange Grove CDD"),

---

[2]      A copy of the executed Purchase Agreement and exhibits thereto are attached hereto as *in globo* Exhibit A.

was organized. By resolutions dated October 6, 23 and 30, 2006, the Board of Supervisors of Orange Grove CDD authorized Orange Grove CDD to issue and sell special assessment bonds (the "Bonds") in an aggregate amount not to exceed $8,465,000. The proceeds of the sale of the Series 2006 Bonds were used to finance the infrastructure of the community to be developed by ROG. When the Bonds were sold, the proceeds were wired to an account by the trustee. ROG would then withdraw these funds to fund the construction of infrastructure.

7.        As of the Petition Date, the principal amount due and owning on the Bonds was $4,915,630.42. As of the Petition Date, ROG had utilized $5,194,995.09 in proceeds from the sale of the Bonds for construction of infrastructure and related costs. As of the Petition Date, $2,825,000 in payments had been made to reduce the principal amounts owing on the Bonds, and $1,628,800 had been paid in interest. As of the Petition Date, $724,639.58 in proceeds from the sale of the Bonds is held by Regions Bank as Trustee as Debt Service Reserve, Principal and other accounts, for payment of Bond related obligations.

8.        In addition to funds related to the Bonds, ROG also received $4,306,546 from BGK for acquisition of the required land and other development expenses. BGK currently holds a first mortgage encumbering the Property.

9.        The initial series of Bonds was the "Series 2006 Project." Under this project, Orange Grove was to be the first Planned Unit Development ("PUD") community established in the Parish of Ascension (the "Parish"). Due to unforeseen delays associated with the PUD approval process, it was necessary to modify and extend the development timeline. At the same time, the primary buyer for the developed lots withdrew from the project. Based on this withdrawal, ROG revised its sale strategy. During the course of this initial development work, the real estate and financial markets collapsed. Demand for new homes disappeared and

3

mortgage financing became difficult and expensive to secure. Loans for builders to acquire lots were non-existent.

10.     As a result of this collapse, ROG again restructured its development plans. In that regard, ROG modified and restructured the Series 2006 Project: (i) reduce the size and scope of the Original Series 2006 Project from 349 lots to 31 Lots (the "Revised Series 2006 Project"), (ii) extend the development timeline for completion of the remaining 318 lots, (iii) reallocate a portion of the bond proceeds to provide an additional twenty-four (24) months of capitalized interest on the Series 2006 Bonds, (iv) redeem $2,560,000 of Series 2006 Bonds, and (v) reduce the Debt Service Reserve Fund by $256,000 to provide a portion of the funds required to redeem the Series 2006 Bonds.

11.     To date, ROG has developed and sold only thirty-five lots. No other sales transactions involving the Property have occurred in the last three years. ROG has determined that the value of remaining Property, even if development is completed, is now less than the anticipated cost of developing the lots.

12.     The Property has been appraised recently for $2,700,000.00. It is currently burdened with a first mortgage in favor of BGK with a balance in the amount of $4,306,546.08 in principal and accrued interest. The Property is also burdened with a mortgage in favor of the Town of Sorrento in the amount of $100,000, and a claim under the Louisiana Private Works Act in favor of Ferris Engineering in the amount of $4,760. Also, the Property is burdened with the interests in favor of Orange Grove CDD to place future liens on the Property for sums representing prepetition principal and interest on the Bonds. ROG attempted to work out potential issues with the Orange CDD and underlying bondholders, but was unsuccessful. Thus, ROG determined to seek relief under Chapter 11 of the Bankruptcy Code primarily to move

4

forward in attempting to liquidate the Property free and clear of liens and place it back into commerce.

### The Stalking Horse Bid

13.     ROG has received an offer for the Property.[3] Subject to the approval of this Court, the Purchase Agreement has been negotiated and signed. While BGK's offer is viewed as substantial and satisfactory in ROG's business judgment, ROG believes the offer must be tested against the market to ensure the best possible outcome for the estate. Accordingly, the offer is intended to serve as a stalking horse bid (the "Stalking Horse Bid") for the Property. Should no "Qualified Offer" be received in a timely manner, ROG will proceed to sell the Property to BGK consistent with the Stalking Horse Bid.

14.     The Stalking Horse Bid has been negotiated between ROG and BGK in good faith and at arm's length. BGK has received no special consideration nor been given any undue competitive advantage by ROG. However, in the interest of full disclosure, BGK is an affiliate of ROG under 11 U.S.C. § 101(2) because of common ownership.

15.     In sum, BGK's offer is for two million seven hundred fifty-three thousand dollars and zero cents ($2,753,000), comprised of: (a) a two million seven hundred thousand dollar and zero cents ($2,700,000.00) credit bid; and (b) fifty-three thousand dollars and zero cents ($53,000.00) cash. Also, BGK has agreed to cap its secured claim at $2.7 million, with the balance of its claim to be treated as a general unsecured claim. This means BGK's ability to credit bid is limited to the initial credit bid of the appraised value of the Property and any subsequent bid increases by BGK will consist entirely of cash. BGK has a twenty-eight (28) day due diligence period commencing from the date an Order is entered by the Court granting this

---

[3]     Again, a copy of the Purchase Agreement is attached hereto as Exhibit "A".

Motion. Counsel for BGK shall send to counsel for ROG the $53,000 cash deposit called for under the Purchase Agreement within so that it is received not later than five (5) days following the approval of this Motion.

### The Proposed Auction Procedures

16.     ROG believes one or more entities may be interested in acquiring the party. As such, should counsel for ROG receive a "Qualified Offer" on or before eight (8) days prior to the date this Motion is set for hearing (the "Offer Deadline"), then ROG shall request the Court to conduct an auction in open Court at the sale hearing.

17.     To be considered a "Qualified Offer," an offer must (i) be in the form of the "Overbid Purchase Agreement,"[4] which contains substantially all of the same terms and conditions of the Purchase Agreement and (ii) be an all cash offer for an amount no less than two million seven hundred seventy-eight thousand dollars and zero cents ($2,778,000.00).[5] In addition, to constitute a "Qualified Offer," an offer must be accompanied by a cash deposit of fifty-three thousand dollars and zero cents ($53,000.00) (the "Deposit"), and proof of the bidder's financial ability to consummate its offer at the auction. Such proof of financial ability to perform shall be in a form satisfactory to ROG and may consist of current financial statements, letters or loan commitments from financial institutions, bank statements reflecting current bank balances, evidence of existing lines of credit with financial institutions, and such other proof as ROG might find to be satisfactory. Further, the Deposit must be received by ROG's counsel, either in cash, certified funds or by wire transfer, on or before the Offer Deadline. ROG has deemed the offer made by BGK to be a "Qualified Offer." Should the auction be invoked, all minimal intervals shall be in an amount of no less ten thousand dollars and zero cents ($10,000.00). If no

---

[4]     A copy of the Overbid Purchase Agreement is attached hereto as Exhibit "C".

[5]     In other words, the minimum overbid is twenty-five thousand dollars ($25,000).

Qualified Offers are received on or before the Offer Deadline, ROG will proceed to close the

sale with BGK without an auction.

### Basis for Relief

18.     Section 363(b)(l) of the Bankruptcy Code provides, in relevant part, that a debtor-

in-possession, "after notice and hearing, may use, sell or lease, other than in the ordinary course

of business, property of the estate." 11 U.S.C. § 363(b). Although § 363 does not set forth a

standard for determining when it is appropriate for a court to authorize the sale or disposition of

a debtor's assets, a sale of a debtor's assets should be authorized when there is an articulated

business justification for doing so.[6]

19.     Virtually all courts have held that approval of a proposed sale of assets of a debtor

under § 363 outside the ordinary course of business and prior to the confirmation of a plan of

reorganization is appropriate if a court finds that the transaction represents a reasonable business

judgment on the part of the trustee or debtor-in-possession.[7]

20.     Whether a transaction has a sufficient articulated business justification depends on

the facts of the case.[8] A bankruptcy court should consider "all salient factors pertaining to the

proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and

---

[6]        *See In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997). *See also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983).

[7]        *See In re Abbotts Dairies of Pa.*, 788 F.2d 143 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 169, 176 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"); *In re Stroud Ford, Inc.*, 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); Lionel, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a § 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

equity holders alike."[9] Relevant factors may include: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition on the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value."[10]

21.     Once a debtor-in-possession has articulated a valid business justification, a presumption arises that the debtor-in-possession, in making a business decision for the company, acts only after it has been appropriately informed and after he has honestly determined that the action to be taken is in the best interest of the company.[11] When applying the "business judgment" standard, courts show deference to a debtor-in-possession business decisions.[12]

22.     In this case, the proposed sale is for a stated consideration of $2.753 million and an agreement to cap its secured claim at $2.753 million. ROG believes this offer constitutes a fair price. Moreover, the proposed sale of the Property is not a *sub rosa* plan of reorganization because it seeks only to liquidate assets and will not restructure the rights of creditors.[13]

23.     Indeed, ROG intends to file a liquidating plan and disclosure statement before the

---

[8]     *See In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

[9]     *Id*. at 1226; *Lionel*, 722 F.2d at 1071.

[10]    *Continental*, 780 F.2d at 1226. *See also Lionel*, 722 F.2d at 1071; *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Condere Corp.*, 228 B.R. 615, 628 (Bankr. S.D. Miss. 1998).

[11]    *See In re Performance Nutrition. Inc.*, 239 B.R. 93, 111 (Bankr. N.D. Tex. 1999).

[12]    *See*, *e.g.*, *Atkins v. Hibernia Corp.*, 182 F.3d 320, 324 (5th Cir. I999); *In re State Park Bldg. Group, Ltd.*, 2005 WL 440379, *2 (N.D. Tex. Feb. 23, 2005) ("great judicial deference is given to [the debtor in possession's] exercise of business judgment").

[13]    *See Continental*, 780 F.2d; *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.), *reh'g denied*, 705 F.2d 450 (5th Cir. 1983). *See also In re Naron & Wagner, Chartered*, 88 B.R. 85 (Bankr. D. Md. 988) (proposed sale is not a *sub rosa* plan because it seeks only to liquidate assets and will not restructure the rights of creditors).

hearing on this Motion. The sale process proposed herein will be incorporated into the plan that will address all other issues beyond the sale of the Property free and clear of liens, claims and interests, namely classification of claims, proposed distribution of the proceeds amongst creditor classes, retention of security interests and rights in and to the estate's property by a liquidating trust, settlement and compromise of litigation, rejection and/or assumption of executory contracts and unexpired leases, mutual releases and claims' resolutions.

24.     The sale proposed herein is a sound exercise of ROG's business judgment. ROG believes that a prompt sale of the Property conducted presents the best opportunity to realize the maximum value of the Property for distribution to ROG's bankruptcy estate and its creditors. ROG further believes that any value available for creditors will be substantially reduced, if not wiped out, absent a timely § 363 sale.[14]

25.     Further, ROG is attempting to put the Property back into the stream of commerce. The Property is subject to multiple Liens and Claims, including those of the Orange Grove CDD. If the Property is not sold free and clear, then title to the Property will be forever clouded. As such, the sale contemplated herein is necessary to return the Property to commerce.

26.     By their own terms, § 363(b) and (f) permit sales of assets outside of the ordinary course of business free and clear of liens, claims, and encumbrances; the section applies in cases pending under any chapter of the Bankruptcy Code, including chapter 11. Although the Fifth Circuit's decision in *Braniff* had long been read to prohibit sales of all or substantially all assets of a debtor in a chapter 11 case as a *sub rosa* plan, *Braniff* has been construed more narrowly in recent years and bankruptcy courts have routinely approved § 363 sales of all or substantially all assets of chapter 11 debtors when exigent circumstances exist and provided that such sales are

---

[14]     *See Lionel Corp.*, 722 F.2d at 1071 (of factors for court to evaluate on motion under § 363(b), "most important perhaps, [is] whether the asset is increasing or decreasing in value").

not disguised attempts to circumvent the disclosure requirements for confirmation of a plan in

chapter 11 cases.[15]

### Free and Clear

27.     Section 363(f) of the Bankruptcy Code permits a debtor-in-possession to sell

property free and clear of another party's interest in the property if:

(1)     applicable nonbankruptcy law permits sale of such property free and clear
        of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is
        greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to
        accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its

five requirements will be sufficient to permit the sale of the Property free and clear of all liens,

claims and encumbrances that may be asserted herein.[16]

28.     The known Liens and Claims on the Property are listed below, and any and all

Liens and Claims, including, but not limited to, those listed below, shall be released from the

Property, only insofar as they apply to the above described Property to be sold, and such Liens

and Claims shall be referred to the proceeds of the sale, with such funds to be held by ROG,

subject to said Liens and Claims, for further proceedings to determine the validity, priority and

extent of such Liens and Claims:

---

[15]     *See In re Chrysler, L.L.C.*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009); *In re General Motors Corp.*, 407 B.R. 463
(Bankr. S.D.N.Y. 2009).

[16]     *See In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the
requirements of at least one subsection are met). *See also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, *12
(Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of §
363(f) have been met").

      a.  BGK, $4,306,546.08

      b.  Town of Sorrento, $100,000

      c.  Ferris Engineering, $4,760

      d.  Orange Grove CDD, $ 4,915,630.42

29.     Here, § 363(f) is satisfied because BGK has consented to same and as there is no remaining equity in the Property, applicable nonbankruptcy law permits the sale.

30.     As part of the proposed sale free and clear of liens, claims, interests, and encumbrances, ROG is generally required to provide adequate protection to the holder of any interest in the Property. *See* 11 U.S.C. § 363(e). Here, all liens and security interests in and to the Property will attach to the proceeds with the same validity, extent, and priority that otherwise exists. The proceeds will be deposited into the trust account of ROG's counsel and will not be used for any purpose without order of the Court or a stipulation signed and filed by the affected creditors allocating the proceeds of the Sale. ROG submits that these provisions and protections provide adequate protection to any creditor or party with an interest in the Property.

### Free and Clear of Pre-Petition Assessments

31.  ROG also seeks to sell the Property free and clear of the Orange Grove CDD's right to assess the Property pursuant to LA. REV. STAT. § 33:9039.29 for prepetition principal, interest or other sums due or owing under the Bonds. Section 363(f) provides, in relevant part, that a "trustee may sell property… free and clear of any interest in such property," under certain circumstances. 11 U.S.C. § 363(f). Orange Grove CDD may argue that assessments made under LA. REV. STAT. § 33:9039.29 are not "interests in property," and that the bankruptcy court should

not rely on *In re Trans World Airlines, Inc.*,[17] and its progeny, which advance a broad reading of

"interests in property."

32.      The Fifth Circuit appears to never have addressed the scope of the language "any

interest in such property," and the statute does not define the term.[18]

33.       In *TWA*, the Third Circuit considered whether (1) employment discrimination

claims and (2) a voucher program awarded to flight attendants in settlement of a class action

constituted "interests" in property for purposes of § 363(f).[19] The Third Circuit began its analysis

by noting that bankruptcy courts around the country have disagreed about whether "any interest"

should be defined broadly or narrowly.[20] The Third Circuit observed, however, that "the trend

seems to be toward a more expansive reading of 'interests in property' which 'encompasses other

obligations that may flow from ownership of the property.'"[21]

34.      The Third Circuit reasoned that "to equate interests in property with only in rem

interests such as liens would be inconsistent with section 363(f)(3), which contemplates that a

lien is but one type of interest."[22] After surveying its owns precedents and the Fourth Circuit's

decision in *In re Leckie Smokeless Coal Co.*,[23] the *TWA* court held that "[w]hile the interests of

the [plaintiffs] in the assets of TWA's bankruptcy estate are not interests in property in the sense

---

[17]      322 F.3d 283 (3d Cir.2003).

[18]      *See*, *e.g.*, *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir.2003) ("The Bankruptcy Code does not define 'any interest,' and in the course of applying section 363(f) to a wide variety of rights and obligations related to estate property, courts have been unable to formulate a precise definition.").

[19]      *See* 322 F.3d at 285.

[20]      *Id*. at 288-89.

[21]      *Id*. at 289 (quotation omitted).

[22]      *TWA*, 322 F.3d at 290.

[23]      99 F.3d 573 (4th Cir. 1996). In *Leckie*, the Fourth Circuit held that Coal Act premium payment obligations owed to employer-sponsored benefit plans were interests in property under § 363(f). *Id*. at 582. The Fourth Circuit explained "while the plain meaning of the phrase `interest in such property' suggests that not all general rights to payment are encompassed by the statute, Congress did not expressly indicate that, by employing such language, it intended to limit the scope of section 363(f) to in rem interests, strictly defined, and [it would] decline to adopt such a restricted reading of the statute…" *Id*.

that they are not in rem interests,… they are interests in property within the meaning of section

363(f) in the sense that they arise from the property being sold."[24]

35.    In *In re Chrysler, LLC*,[25] the Second Circuit affirmed the bankruptcy court's sale

order, and affirmed the bankruptcy court's determination that it had the authority to authorize

the sale free and clear of existing product liability and asbestos claims. The appellants argued

that personal injury claims are not "interests in property" as set forth in § 363(f). In holding that

the term "any interest in property" includes all claims "that arise from the property being sold,"

the Second Circuit relied heavily on the Third Circuit's decision in *TWA*. According to the

Second Circuit, "Because appellants' claims arose from Old Chrysler's property, § 363(f)

permitted the bankruptcy court to authorize the [section 363] Sale free and clear of appellants'

interest in the property."[26]

36.    Turning to policy considerations, the Second Circuit noted that "given the

expanded role of section 363 in bankruptcy proceedings, it makes sense to harmonize the

application of section 1141(c) and 363(f) to the extent permitted by the statutory language."[27]

Accordingly, the court rejected the appellants' argument that the different terms used in §§

363(f) and 1141(c) (more specifically, the use of the additional term "claims" in § 1141(c))

indicated that Congress intended to extinguish tort claims only in the reorganization plan

context, and not the § 363 sale context. The Second Circuit stated, "We do not place such

weight on the absence of the word 'claims' in § 363(f)," and observed that courts have already

---

[24]    322 F.3d at 290 (emphasis added).

[25]    576 F.3d 108 (2d Cir. 2009), *cert. granted and judgment vacated on appeal on other grounds*, 130 S.Ct. 1015, 175 L.Ed.2d 614 (2009).

[26]    *Chrysler*, 576 F.3d at 126.

[27]    *Id.* at 125 (citation omitted). Section 1141(c) provides that, except as otherwise provided in a confirmed plan or confirmation order, after confirmation, the property dealt with by the plan is free and clear of "all claims and interests of creditors, equity security holders, and of general partners in the debtor."

broadly construed both §§ 363(f) and 1141(c).[28] As an additional policy argument, the court

noted that "to allow the claimants to assert successor liability claims against [the purchaser]

while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent

with the Bankruptcy Code's priority scheme."[29]

37.    Given the broad meaning of "interests in property," existing assessments and the

right to make future assessments should be considered interests in property. The reason for this

outcome is the nature of the assessments. Under both subsections (A) (dealing with benefit

special assessments) and subjection (B) (dealing with maintenance special assessments), LA.

REV. STAT. § 33:9039.29 provides that assessments "shall be a lien on the property against

which assessed until paid…" Subsection (C) of LA. REV. STAT. § 33:9039.29 provides that the

assessments "shall constitute a lien on the property against which assessed until paid and shall

be on a parity with the lien of state, parish, municipal, and school board taxes." Moreover,

"assessments may be made payable in no more than thirty yearly installments."[30] Also, LA. REV.

STAT. § 33:9039.35 provides,

> Subsequent to the establishment of a district under this Chapter, each contract for
> the initial sale of a parcel of immovable property and each contract for the initial
> sale of a residential unit within the district shall include, immediately prior to the
> space reserved in the contract for the signature of the purchaser, the following
> disclosure statement in boldfaced and conspicuous type which is larger than the
> type in the remaining text of the contract: "THE (Name of District)
> COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY
> ASSESSMENTS ON THIS PROPERTY. THESE ASSESSMENTS PAY THE
> CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF
> CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND
> ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT.

---

[28]    *Id.*

[29]    *Id.* at 126 (quoting *TWA*, 322 F.3d at 292). *See also* 3 Collier on Bankruptcy ¶ 363.06[1], at 363-41 (15th ed. rev.) ("Although some courts have limited the term ['interest in property' as used in section 363(f)] to *in rem* interests in the property, the trend seems to be in favor of a broader definition that encompasses other obligations that may flow from ownership of the property."; footnotes omitted).

[30]    LA. REV. STAT. § 33:9039.29(E).

THESE ASSESSMENTS ARE IN ADDITION TO PARISH AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW."

Based upon these provisions, assessments should be considered in the nature of *in rem* interests in property. Assessments constitute "liens," which are classic examples of "interests in property." Also, assessments may be payable in thirty year installments. This resembles a mortgage, which is considered a "lien" under 11 U.S.C. § 101(37). Therefore, existing assessment rights should be considered interests in property so that property may be sold free and clear of existing assessment pursuant to § 363(f).

38.     Orange Grove CDD will likely argue that property cannot be sold "free and clear" of future assessments because these assessments have not been made, *i.e.*, arisen, at the time the sale. *Chrysler* is distinguishable. In those cases, the courts were concerned with future claimants' due process. Here, those concerns are reduced because the entity with the right to assess, Orange Grove CDD, will have been provided notice of the sale and will have been given an opportunity to participate in the sale process. Moreover, an assessment is closer to a traditional *in rem* interest in property than a products liability claimant's interest in the assets of an automobile manufacturer. Thus, *Chrysler* does not counsel against selling property free and clear of assessments. Accordingly, the Property should be sold free and clear of existing (there are none) and the right to make future assessments for prepetition principal, interest or other sums due or owing under the Bonds.

**WHEREFORE**, ROG requests that, after notice and hearing, the Court enter an Order (i) approving the form of the Purchase Agreement; (ii) approving the overbid procedure according to the terms and conditions stated herein, including without limitation the form of Overbid Purchase Agreement; (iii) approving the sale of the Property, and upon the Closing of the sale of the Property, orders such sale to be free and clear of all liens, interests and encumbrances,

15

including without limitation Orange Grove CDD's right to assess the Property pursuant to LA.

REV. STAT. § 33:9039.29 for prepetition principal, interest or other sums due or owing under the

Bonds; (iv) authorizing the Recorder of Mortgages and Conveyances of Ascension Parish, upon

the Closing of the sale of the Property, to cancel and release the Property from the effect of all

liens, interests and encumbrances, (v) approving ROG to execute any other pre-closing and post-

closing deliverables required under the applicable purchase agreement; and (vi) any other such

other relief as proper in law or equity.

**STEWART ROBBINS & BROWN LLC**
620 Florida Street, Suite 100
Baton Rouge, LA 70801
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:     **/s/ William S. Robbins**
William S. Robbins (La. Bar No. 24627)
P. Douglas Stewart, Jr. (La. Bar No. 24661)
Brandon A. Brown (La. Bar No. 25592)
Ryan J. Richmond (La. Bar No. 30688)
E-mail: wrobbins@stewartrobbins.com
E-mail: dstewart@stewartrobbins.com
E-mail: bbrown@stewartrobbins.com
E-mail: rrichmond@stewartrobbins.com

***Attorneys for Renaissance Orange Grove, LLC***

*4839-2830-9013, v. 4*

16